MID–AMERICA DAIRYMEN, INC., a Kansas corporation, and Far-Mar-Co., Inc., a Kansas corporation, Plaintiffs-Appellants,

v.

James E. SCHAFFNER, Director of Revenue, Defendant-Respondent.

No. 55204.

Supreme Court of Missouri,
Division No. 1.

March 8, 1971.

On Motion for Rehearing or to Transfer to Court En Banc Denied April 12, 1971.

John C. Gage, Major W. Park, Jr., Kansas City, for appellants; Gage, Hodges, Kreamer & Varner, Kansas City, of counsel.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

LAURANCE M. HYDE, Special Commissioner.

Declaratory judgment action to determine the meaning of § 301.140, RSMo V.A.M.S., as to taxation of motor vehicles where ownership is changed through consolidation of corporations. The trial court's judgment found there was a transfer of ownership requiring plaintiffs to obtain new certificates of registration and license plates. Plaintiffs have appealed from this judgment. We affirm.

Jurisdiction is in this court because a state officer, the Director of Revenue, is a party and because the construction of the revenue laws of this state is involved.

There was an agreement as to the facts and it appears each plaintiff is a Kansas corporation organized under the Kansas Cooperative Marketing Association Law, K.S.A. § 17–1601 to § 17–1636, and properly qualified to do business in Missouri. Two Missouri corporations, one Kansas corporation and two Illinois corporations were consolidated on July 1, 1968 as Mid-America Dairymen, Inc. One Missouri corporation, two Kansas corporations and one Nebraska corporation became Far-Mar-Co., Inc. on May 31, 1968.

Each of the corporations consolidated into the two plaintiff corporations owned motor vehicles properly titled, registered and licensed for 1968. Plaintiffs, to continue to use them, sought only a certificate of ownership for a fee of one dollar per

vehicle under § 301.190(1) (Missouri statutory references are to RSMo, V.A.M.S.). Plaintiffs claim that § 301.190(1) authorizes them to operate the vehicles acquired through the consolidation by paying only a fee of one dollar for a certificate of ownership. Authorization for use on that basis was refused. Defendant claims plaintiffs must comply with § 301.140(1) which provides: "1. Upon the transfer of ownership of any motor vehicle or trailer, the certificate of registration and the right to use the number plates shall expire and the number plates shall be removed by the owner at the time of the transfer of possession, and it shall be unlawful for any person other than the person to whom such number plates were originally issued, to have the same in his or her possession whether in use or not; * * *." Defendant also claims plaintiffs must apply for registration and pay the registration fees required. See §§ 301.055–301.058.

Both parties cite K.S.A. § 17–3706 on consolidation or merger, in part providing: "The resultant corporation shall possess * * * all property, real, personal and mixed, and all debts due to any of said constitutent corporations * * *. * * * All property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the resultant corporation as they were of the several and respective constituent corporations, and the title to any real estate, whether by deed or otherwise, under the laws of this state, vested in any of such constituent corporations, shall not revert or be in any way impaired by reason of this act."

Plaintiffs argue that the title to the motor vehicles involved passed by operation of law and therefore there was no "transfer of ownership." Plaintiffs rely on National Dairy Products Corporation v. Carpenter, Mo.Sup., 326 S.W.2d 87, which involved sales tax when three corporations merged. We held (326 S.W.2d l.c. 91): "[T]he acquisition of the motor vehicles by the plaintiff through the merger of the

three corporations unto itself, was not a transfer taxable under the provisions of Sec. 144.440," saying: "There was no purchase price or contract of sale involved." We held there must be a seller and a buyer and a purchase price to constitute a transaction requiring a sales tax to be paid.

We have a different situation here. A tax on a purchase and sale is not involved. Instead it is a question of a transfer of ownership. Plaintiffs made application for new certificates of ownership which surely indicates their belief that there had been a transfer of ownership. A transfer of ownership not only requires a certificate of ownership for the new owner, § 301.190(1), but also removal of the number plates on the vehicle by the previous owner. § 301.140(1). It is provided by § 301.020 that every owner of a motor vehicle must annually file an application for registration. Section 301.030 provides the periods for registration, different for commercial vehicles from others. Certainly plaintiffs admit a change of ownership by applying for new certificates of ownership under the provisions of § 301.190(1). Therefore if plaintiffs were required by the transaction to get new certificates of ownership by § 301.190(1) then they also were required by "the transfer of ownership," § 301.140(1) that "the number plates shall be removed by the owner at the time of the transfer of possession" and it became "unlawful for any person other than the person to whom such number plates were originally issued, to have the same in his or her possession" with the exception of the provision for written permission for use for fifteen days.

The briefs and the trial court attempted a distinction between a transfer of ownership by contract and a transfer by operation of law as bearing on the right to use the existing licenses. We consider that issue immaterial and rule that determination of the right to use the previously issued licenses is a matter of statutory construction to determine the effect of a transfer of ownership. It is our view

our statutes mean that if a new certificate of ownership was necessary, which plaintiffs apparently conceded by applying for it (we think correctly) then it was also necessary that the old number plates should be removed and application made for new ones with payment of the required fees. We hold that is the only reasonable construction of our statutes involved.

■ The Supreme Court of Ohio took such a view in a similar situation in Columbus & Southern Ohio Electric Co. v. West, 140 Ohio St. 200, 42 N.E.2d 906, 908, holding general provisions in a statute for succession by a consolidated company to the "privileges" theretofore enjoyed by the constituent companies did not control over the explicit clauses of the motor vehicle registration statute "providing that where there is a 'transfer of ownership' the 'registration * * * shall expire' and further providing that 'it shall be the duty of the original owner to immediately remove such number plates from such motor vehicle.'" See also Greyhound Corp. v. Ayers, 119 Ohio App. 53, 196 N.E.2d 459. We hold our statutes require the same result and plaintiffs must obtain new license plates to operate the motor vehicles they acquired.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.

ON MOTION FOR REHEARING OR TO TRANSFER TO THE COURT EN BANC

PER CURIAM:

Plaintiffs argue that they "did not make application for new certificates of ownership; rather they requested that respondent change the name of the holders of the certificates to reflect the changes of name of the various corporate entities," which took place in 1968. They tendered a fee of $1.00 per vehicle which they say § 301.190, RSMo, V.A.M.S., requires. We consider this an attempted distinction without a difference. The only purpose for which the $1.00 fee is required by § 301.190 is to obtain a certificate of ownership. Calling it something else does not change the situation. Since the corporations plaintiffs succeeded already had certificates of ownership any certificates issued to show plaintiffs were the owners of these vehicles would necessarily be new certificates of ownership.

■ Plaintiffs say: "Assuming, for the purposes of argument, that the requests made by appellants to the Director of Revenue constituted a request for a new certificate of ownership, such request should not be considered as determinative of the question presented in appellants' declaratory judgment action. The specific question presented to the Court is whether or not appellants *are required to make such an application* under the express provisions of the statutes. Since the decision of the Court relies heavily on the conclusion that appellants applied for certificates of ownership, a rehearing should be granted to consider the appropriate determination based upon the correct facts." (Plaintiffs' emphasis.) Our decision is based on our construction of § 301.190 and § 301.140, RSMo, V.A.M.S., which provide the consequences and requirements of a transfer of ownership and which as plaintiffs say must be read together. Reading them together our conclusion is plaintiffs were required to get new certificates of ownership because, under the facts of this case, there was a transfer of ownership which caused the previously issued certificates of registration to expire and terminated plaintiffs' right to use the previously issued license plates.

The motion for rehearing or to transfer to the court en banc is overruled.